```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


TattleTale Portable Alarm      :
Systems, Inc.,

         Plaintiff,            :

    v.                         :    Case No. 2:10-cv-226

                               :    JUDGE EDMUND A. SARGUS, JR.
Calfee, Halter & Griswold,          Magistrate Judge Kemp
LLP, et al.,                   :

         Defendants.           :
```

OPINION AND ORDER

I. Introduction

On April 18, 2011, defendant Calfee, Halter and Griswold, LLP, took the deposition of Brian Hess, who is the president of plaintiff Tattletale Portable Alarm Systems, Inc.  One of the first questions typically posed to a deponent - and one which was put to Mr. Hess - was what he had done to prepare for his deposition.

As it turns out, in order to refresh his memory about dates, Mr. Hess looked at a time line which had been prepared by his attorneys.  Calfee's counsel immediately asked to see a copy. That request, and all subsequent requests, were rebuffed on the grounds that the time line is protected from disclosure by the attorney-client privilege and by the work product doctrine. Calfee has now filed a written motion asking the court to order Tattletale to produce it.  The motion is fully briefed.  For the following reasons, the Court grants the motion.

II. The Facts

There are not many relevant facts concerning the motion to compel beyond those stated in the introduction.  Mr. Hess is the president of Tattletale, and appears to have testified in that

capacity earlier in the case. However, on April 18, 2011, he was testifying as an individual witness. The full transcript of this latter deposition does not appear to have been filed with the Court, but from the excerpts submitted by Calfee and from the parties' briefs, it appears that he was questioned fairly extensively about his reasons for believing that Calfee had some responsibility for making sure that the maintenance fees for the patent at issue in this case were paid in a timely fashion. It also appears that Calfee was not the first law firm to represent TattleTale in connection with the prosecution and maintenance of this patent. In fact, according to Calfee, in the past Mr. Hess has blamed other law firms for failing to pay the maintenance fee. Given this background, Calfee claims that the success or failure of the malpractice claim which TattleTale has asserted is heavily dependent on the precise chronology relating to its retention and firing of various lawyers or law firms, including Calfee itself, and how that chronology relates to dates such as when the maintenance fee was to be paid and when, if the patent lapsed as a result of the failure to pay those fees, and at what time TattleTale had the ability to seek its reinstatement.

### III. Analysis

> Except as otherwise provided in criminal proceedings by section 3500 of title 18, United States Code, if a witness uses a writing to refresh memory for the purpose of testifying, either--
>
> (1) while testifying, or
>
> (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,
>
> an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

Fed.R.Evid. 612.

This case turns, at least in part, on the application of this Rule. Calfee's argument, in its purest form, is that any time a witness reviews a document in order to refresh the witness' recollection, and then gives testimony, any privilege which might previously have attached to the document has been waived. It relies on this language from United States v. 22.80 Acres of Land, 107 F.R.D. 20, 25 (N.D. Cal. 1985):

> Rule 612 applies to written materials reviewed prior to a deposition. In re Comair Air Disaster Litigation, 100 F.R.D. 350, 353 (E.D.Ky.1983); James Julian, Inc. v. Raytheon Co., 93 F.R.D. 138 (D.Del.1982). Rule 612(2) in particular has been interpreted to permit discovery of writings (or portions thereof) that a witness reviewed before a deposition for the purpose of refreshing his or her recollection; any privilege or work product protection against disclosure is deemed waived as to those portions so reviewed. The court then may order disclosure if, in its discretion, it determines disclosure is in the interest of justice. Fed.Rule Evid. 612(2), Comair, supra, 100 F.R.D. at 353. See also Wheeling-Pittsburgh Steel Corp. v. Underwriters Laboratories, Inc., 81 F.R.D. 8, 10 (N.D.Ill.1978).

However, the issue is not quite that straightforward. Even in the 22.80 Acres decision, the court did not simply order the production of the document in question because a witness had used it to refresh his recollection; rather, the court noted that Fed.R.Evid. 612(2) does not make disclosure of such materials automatic, but discretionary, and it went on to balance the competing interests involved before deciding that the document had to be turned over. Those interests were, according to the court, "the objective of full disclosure and ascertainment of the truth that Rule 612 and the federal discovery rules reflect" and "the interest in maintaining the confidentiality of protected material, as is represented by the work product doctrine ...." Id. Thus, unlike a true waiver analysis, where, if waiver is

found, the only remaining issue would be the relevance of the document to a claim or defense in the case, even under the approach adopted in the 22.80 Acres case, the goals furthered by the work product doctrine (and, if the document is also protected by the attorney-client privilege, that doctrine as well) must be factored into the analysis.

This point is well-illustrated in Server Technology v. American Power Conversion Corp., 2011 WL 1447620 (D. Nev. April 14, 2011). That court noted that tension exists between Rule 612(2) and Fed.R.Civ.P. 26(b)(3), and cited Parry v. Highlight Indus., Inc., 125 F.R.D. 449, 452 (W.D. Mich. 1989), as having adopted a three-part test for reconciling the competing interests involved, including exploring whether any witness coaching has occurred, whether the document (if it is subject to work product protection) is "core work product," and whether the request for its production is simply a "fishing expedition." Server Technology, 2011 WL 1447620, at *7. It also cited to the balancing analysis performed in the 22.80 Acres case, which it believed to be consistent with Parry, and ultimately concluded that the redacted portions of the document in question did not have to be produced because the witness' testimony relied primarily on the portions which were produced.

Other decisions (and there are many of them, including cases dealing specifically with time lines like the one at issue here, such as Denman v. Youngstown State Univ., 2007 WL 2781351 (N.D. Ohio September 21, 2007)) cited by the parties represent variations on this theme, and articulate other factors to be taken into account as well. See, e.g., Nutramax Laboratories, Inc. v. Twin Laboratories Inc., 183 F.R.D. 458 (D. Md. 1998), a case which, as TattleTale points out, sets for a nine-factor test to be used once it is determined that Rule 612(2) has come into play. As that court observed, and it is as true today as it was

then, "[a]lthough many courts have analyzed this issue, the results have not been consistent ...." Id. at 462. The intent of all of these tests is, however, to determine whether it is fair for a party who has used a document to refresh a witness' recollection prior to testifying to prevent the opposing party from seeing that document and thus evaluating the impact which it may have had on the testimony given.

The heart of TattleTale's argument that it would be unfair (or, in the words used in Rule 612, not necessary in the interest of justice) to require it to turn over this time line is that it constitutes "core" work product, that is, work product which reveals the thought processes and mental impressions of opposing counsel. Courts have certainly exercised more caution in ordering the production of this type of material than material which is nothing more than a compilation of dates or facts from unprivileged documents and which does not suggest how counsel views the case. It is not at all clear to this Court, however, that a simple chronology constitutes "core" work product.

In Weintraub v. Mental Health Authority of St. Mary's, Inc., 2010 WL 347882 (D. Md. January 22, 2010), the court was faced with a similar issue, and, as TattleTale notes in its memorandum in opposition, did not order production of the time line. However, that court did not expressly rule that the time line was core work product even though that finding was urged upon it. Rather, it held that even if it was only "fact work product," the opposing party had not demonstrated a substantial need for its production. Similarly, no decision was reached on that issue in Scanlon v. Bricklayers and Allied Craftworkers, Local No. 3, 242 F.R.D. 238 (W.D.N.Y. 2007), another case relied on by TattleTale, because the court held that the witness was considered to be the "client" for work product purposes, and exposure of the client to work product does not waive the protection enjoyed by that type

of information.  Interestingly, although the argument in favor of waiver was that the witness had reviewed the time line in question as part of his deposition preparation, the court in Scanlon did not do a Rule 612 analysis.  Finally, the debate about the nature of a time line's (or a document compilation's) tendency to reveal the thought processes of counsel is well-illustrated by the conflicting opinions in the seminal case of Sporck v. Peil, 759 F.2d 312 (3d Cir. 1985), where Judge Seitz, in dissent, observed that:

> There are many reasons for showing a document or selected portions of a document to a witness. The most that can be said from the fact that the witness looked at a document is that someone thought that the document, or some portion of the document, might be useful for the preparation of the witness for his deposition. This is a far cry from the disclosure of the a lawyer's opinion work product. Even assuming that the documents were selected by the petitioner's attorney, the subject matter is so undifferentiated that its potential for invasion of work product is minuscule at best.

Sporck, 759 F.2d at 319.  The same can be said for a time line which does no more than reflect the thought that someone, for some reason, though the dates on that document were important to the case.  Even the majority opinion in that case, which resulted in the issuance of a writ of mandamus to the trial court prohibiting the disclosure of the document compilation, noted in *dictum* that had counsel done a better job of demonstrating that the witness actually relied on the document compilation in giving his testimony, Rule 612 might have required its disclosure.  See Sporck, 759 F.2d at 319 n.8 ("The proper use by deposing counsel of Rule 612 in cases similar to this one will result in identification of documents relied upon by a witness without implicating the work product doctrine").

    There are not an overabundance of factors to balance in this

case.  Calfee has made a strenuous argument about the importance of various dates to the validity of TattleTale's claim, but has not shown that there is any serious disagreement about these dates or that Mr. Hess' testimony about those dates was questionable or inconsistent with the documentary evidence which, presumably, both confirms the important dates in the case and from which the dates on the time line were taken.  To that extent, it has not shown a compelling need for the document.  On the other hand, TattleTale has not persuaded the Court that the time line is core work product.  This appears to be a case where the dates which underlie both its affirmative claim, and Calfee's defense of the claim (as outlined in its memoranda in support of the motion to compel), are known to both parties, and both parties appreciate their significance.  The time line is not likely either to reveal some trial strategy not already evident to Calfee or allow it to piggyback on trial preparation work done by TattleTale's attorneys, so that the purposes behind the work product doctrine would not be seriously undermined if the document were turned over.

     What is clear is that Mr. Hess reviewed the document prior to his deposition for the clear purpose of refreshing his recollection, and it must have done so, because he stated that he was otherwise unsure about dates.  While these facts, considered together, do not present a compelling case for either outcome, on balance, the Court concludes that the use of a document which possesses little, if any, work product value, for the express purpose of refreshing an important witness' recollection about dates, some of which may be important to the proof of either the claim in chief, or the defense to it, calls for it to be produced to the opposing party in order to further the interest of justice.  That is so because, in this particular situation, Calfee's need to insure that the discovery process yielded

accurate information, untainted by an unseen and unreviewed document, outweighs any interest TattleTale may have in withholding it.  For that reason, the Court will grant the motion to compel.

### IV.  Conclusion

Based on the foregoing analysis, Calfee's motion to compel (#66) is granted.  TattleTale shall provide a copy of the time line to Calfee within seven days of the date of this order.

### V.  Procedure on Objections

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge